IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARLA D. SULLIVAN, et al., | * | |
| | * | |
| v. | * | Civil No. JFM-01-92 |
| | * | |
| JAN HERNANDEZ, et al. | * | |

\*\*\*\*\*

MEMORANDUM

In this action Harold and Carla Sullivan allege that they were unlawfully discriminated against on the basis of race and disability in violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981, et seq. ("section 1981") when their application for rental housing was rejected. They have brought suit against Jan Hernandez, Noah & Cummings Property Management, Inc. ("Noah & Cummings"), Susan Ronan, and Long and Foster Real Estate, Inc. ("Long and Foster"). Hernandez and Noah & Cummings joined Ronald and Maureen Carroll as third-party defendants. Discovery has been completed, and the defendants and the Carrolls have filed a joint motion for summary judgment. Plaintiffs have filed a cross-motion for summary judgment as to their claims for disability discrimination. For the reasons that follow, I will deny both motions.

I.

On December 31, 1998, the Sullivans, who are both African-American, met with Hernandez, an agent for Noah & Cummings, in order to discuss rental properties. After the Sullivans and Hernandez spoke, Hernandez took the Sullivans to view several properties. One property viewed by the Sullivans was 503 Curry Ford Road, owned by the Carrolls. After viewing this property, the Sullivans completed a rental application for it on December 31, 1998.

-1-

Subsequently, Hernandez delivered the application to Susan Ronan, an agent for Long and Foster who listed the Carrolls' property. Ronan asserts that she did not receive the Carrolls' application until January 4, 1999.

A few days before Ronan allegedly received the Carrolls' application, Ronan received a rental application for the Carrolls' property from Partha Bagchi. Long and Foster personnel then obtained background information on the Carrolls and Bagchi, including credit reports, information about the rental history of the applicants, and information about the applicants' employment. Specifically, the reports indicated that (1) Bagchi's salary was $90,000 compared to the Sullivans' collective salary of approximately $50,000, (2) the Sullivans' had a reserve in mutual funds and bank accounts totaling approximately $27,000, (3) there were two negative credit reports in Mrs. Sullivan's history, (4) Mrs. Sullivan had one prior bankruptcy, and (5) on one prior occasion Bagchi violated a rental lease by vacating a premises more than six months prior to the lease's expiration without landlord approval. On January 8, 2002, Ronan read the reports to Mr. Carroll.[1] After listening to these reports, the Carrolls chose to rent the home to Bagchi.

II.

Courts have adapted the McDonnell-Douglas framework to housing discrimination claims. See, e.g., Mencer v. Princeton Square Apartments, 228 F.3d 631, 634 (6th Cir. 2000). Thus, in order to survive summary judgment, the Sullivans must allege sufficient facts to establish a prima facie case of housing discrimination. To establish a prima facie case of housing

---

[1] Due to the timing in processing, Ronan was only able to read an interim credit report for the Sullivans while the report for Bagchi was a final report. (Ronan Dep. at 94, Pl. Ex. 10.)

discrimination, the plaintiff must prove that: (1) he or she is a member of a statutorily protected class; (2) he or she applied for and was qualified to rent or purchase certain property or housing; (3) he or she was rejected; and (4) the housing or rental property remained available thereafter. See Mencer 228 F.3d at 634-35; Soules v. U.S. Dept. of Housing and Urban Development, 967 F.2d 817, 822 (2d Cir. 1992). The first three elements are undisputed. The Sullivans are African-American. Additionally, the Sullivans applied to rent the Carroll's property, were qualified to rent the property, and their application was rejected.

The defendants and third-party defendants (to whom, for ease of presentation, I will collectively refer as "defendants") dispute the final element of a prima facie case. They contend that the Sullivans cannot establish that the rental property remained available because another application was accepted immediately after their application was rejected. That argument fails because it would allow a discriminating party to avoid a discrimination suit simply by accepting another application. The final element of a prima facie case does not require a plaintiff to establish that the property remained available indefinitely or for a long period. It simply requires a plaintiff to show that the property remained available immediately after the application in question was received. Here, the property was available when the Sullivans' application was received by the Carrolls and their real estate agent, Ronan, even though Bagchi's application was subsequently accepted. Thus, the Sullivans have established a prima facie case of housing discrimination.

The burden shifts to the defendants to offer a legitimate, non-discriminatory explanation for selecting Bagchi's application. In an affidavit submitted in support of defendants' summary judgment motion, Mr. Carroll states that he selected Bagchi's application because he believed

that: (1) Bagchi had a stronger credit history than the Sullivans; (2) Bagchi had a greater income than the Sullivans; (3) several creditors reported that Mrs. Sullivan had not paid her debts; and (4) Mrs. Sullivan had declared bankruptcy. (Carroll Aff. ¶ 7.) Although the Sullivans debate the merits of which applicant was better qualified financially, on its face Carroll's explanation is both reasonable and non-discriminatory.

Thus, the burden shifts back to the Sullivans to establish that the Carrolls' explanation is pretextual. A plaintiff may establish pretext by demonstrating that "the employer's proffered explanation is unworthy of credence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). "Inconsistent post-hoc explanations" by an employer for its adverse action "is probative of pretext. . . ." Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 647 (4th Cir. 2002) (citing EEOC v. Sears Roebuck, 243 F.3d 846, 852-53 (4th Cir. 2001)); see also Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1167 (6th Cir.1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").

In this case, the Carrolls initially offered an explanation for selecting Bagchi's application over the Sullivans which is inconsistent with the more recent affidavit Mr. Carroll has submitted. In their answers to interrogatories, they cited three factors that led to their decision: Bagchi's financial and "fully qualified" status, the fact that Ronan recommended Bagchi's application, and the fact that Bagchi's application was received first.[2] When confronted with potential disputes

---

[2]The Carrolls' answer to an interrogatory from third-party plaintiffs stated as follows:

Ms. Ronan stated that the [Sullivan] application was not financially strong and that the [Sullivans] had previous financial problems. . . . Susan Ronan then

-4-

over two of these factors, the Carrolls retreated and dwindled their explanation down to one factor: Bagchi's financial status.

A reasonable jury could find that the shift in the Carrolls' position was not incidental and raises a question concerning defendants' motivation. First, there is an inconsistency regarding Ronan's role in the decision to choose Bagchi's application. In their interrogatory answers, the Carrolls stated that they chose to enter into a lease with Mr. Bagchi because "Mr. Bagchi's application was recommended to us by our trusted real estate agent, Ms. Ronan." (See Pl. Ex. 4 at 5.) In contrast, in his current explanation, Mr. Carroll downplays Ronan's role in the decision. In fact, Mr. Carroll's recent affidavit, makes no reference to advice from Ronan. (See Def. Ex. 5 ¶¶ 6-8.) The reason for this change may be that defendants now realize that Ronan, but not the Carrolls, had reviewed the rental application, which included copies of the Sullivans' drivers' licenses. By detaching Ronan from the decision to choose Bagchi, the defendants are able to argue (and, in fact, do argue) that the decision to choose Bagchi could not have been discriminatory because Mr. Carroll made the decision without knowledge of the Sullivans' race.

Second, there is an inconsistency regarding the timing of the applications. In their interrogatory answers, the Carrolls stated that they chose Bagchi's application because it "was the first that [they] received." (See Pl. Ex. 4 at 5.) Mr. Carroll's later affidavit, however, makes no reference to the order in which the applications were received. This is significant because the

---

      recommended that the Carrolls select the first fully qualified applicant/application that she received, Mr. Bagchi. We chose to enter into a lease with Mr. Bagchi solely because a) Mr. Bagchi's application and offer to rent was the first that we received; b) Mr. Bagchi was fully qualified; c) Mr. Bagchi's application was recommended to us by our trusted real estate agent, Ms. Ronan; and d) Mr. Bagchi had a strong financial status and history. (See Pl. Ex. 4 at 5.)

evidence is contradictory concerning when Ronan received the Sullivans' application. Ronan testified that she did not receive the application from Hernandez until January 4, 2002. (Ronan Dep. at 41-42, Pl. Ex. 10.) Hernandez, on the other hand, testified that she dropped the application off at Ronan's office on December 31, 2001. (Hernandez Dep. at 29-34, Pl. Ex. 9.) Again, an inconsistency is presented that could lead a reasonable jury to infer that the legitimate, nondiscriminatory explanation offered by the defendants is pretextual. Accordingly, I will deny the defendants' motion for summary judgment.

### III.

I will now briefly address the Sullivans' contention that they should be granted summary judgment claim for disability discrimination. The Carrolls rejected the Sullivans' application, in part, because of Carla Sullivan's credit history and prior bankruptcy. This negative credit history was allegedly due to Carla Sullivan's disability. The Sullivans argue that simply because Mr. Carroll knew that the Sullivans' income was from disability payments, the defendants must be held per se liable for housing discrimination. They cite no authority for this proposition, and I find it entirely unpersuasive.

A separate order is being entered herewith.

Date: August 1, 2002

J. Frederick Motz
United States District Judge